HEARD NOVEMBER TERM, 1872.

## HALFACRE vs. WHALEY.

In an action on a contract for the payment of dollars, made in 1863, the onus is on the defendant to show, by evidence, that the parties intended that payment should be made in Confederate currency. The intention may be shown by direct evidence or by circumstances.

In such an action the parties are entitled to the benefit of the ordinance of September 27, 1865.

BEFORE MOSES, J., AT NEWBERRY, SEPTEMBER TERM, 1872.

Bill by Henry Halfacre, plaintiff, against Richard S. Whaley, defendant, to foreclose a mortgage on a lot in the town of Newberry. The case came before the Court on exceptions by plaintiff to the report of a Referee, which is as follows :

"It being referred to the undersigned, as special Referee, by order dated 13th March, 1869, to report the amount due on the debt secured by mortgage in this case, the following is respectfully submitted :

"The defendant purchased a lot from plaintiff on the 28th day of July, 1863, for the sum of three thousand dollars. The defendant paid $1,000 cash, in Confederate currency, and gave two notes for the balance of the purchase money, each in the sum of $1,000, one payable 1st January, 1864, and the other payable 1st January, 1865, with a mortgage of the premises. The evidence adduced, in reference thereto, is contradictory and unsatisfactory, the plaintiff claiming that the credit portion was to be paid in good money, and the defendant saying that the contract was made in reference to the currency then in existence. The Referee has no good reason to doubt the veracity of either party, and is of the opinion that but little was said in reference to said currency, (both parties being present.) The lot sold, according to the evidence, (a copy of which is herewith filed,) for about $800 more than its true value, or the amount it was purchased for previous to the war, and it seems to be a hardship, under the existing laws, to report either the whole amount, or to scale the same, and justice to both parties would seem to require that the defendant pay the true value, above stated, after deducting the payment. The Referee, however, in view of the conflicting testimony, and regarding the scaling Act imperative in cases where the contract is made during the years from 1861 to 1865, unless positive and unconflicting testimony is

adduced to the effect that the contract was not made in reference to said currency, reports due 1st October, 1869, two hundred and eighty-one dollars and fifty-seven cents.

"But, should the Court hold that the entire amount should be paid, then the amount due 1st October, 1869, is twenty-nine hundred and nine dollars and sixty-four cents."

The decree of the Circuit Judge is as follows:

MOSES, J.  Suit in this case was commenced by bill to foreclose a mortgage on a lot of land in the town of Newberry, dated the 25th day of July, 1863, given to secure the payment of two sealed notes of that date, each for one thousand dollars, payable the first day of January, 1864, and the first day of January, 1865, respectively, the same being part of the purchase money of the land embraced in the mortgage.

The defendant answered, and the first hearing was upon bill and answer, on the 13th day of March, 1869, when it was, by order of the Court, referred to Thomas M. Lake, Special Referee, to ascertain and report the amount due on the debt secured by mortgage in this case.

The case was again heard, at the present Term, on the report of the Referee, and exceptions by the plaintiff.

The lot of land embraced in the mortgage was conveyed on the 28th July, 1863, for the consideration of three thousand dollars, by the plaintiff to the defendant, of which sum one thousand dollars was paid in cash, and the remaining two thousand dollars were secured by the two sealed notes hereinbefore mentioned, and the mortgage sought to be foreclosed in this proceeding.

The defendant, in his answer, insisted upon the application of the provisions of the Act of the General Assembly, entitled "An Act to determine the value of contracts made in Confederate States notes or their equivalent."  The plaintiff denied the applicability of that Act, and insisted upon the payment of his entire debt in the present currency.  To this, the only point of issue in this case, the testimony taken before the Referee (a copy of which accompanied his report) was directed.  The plaintiff testified not as to the currency in which his debt was to be paid, but that the payment was to be made in good money.  The defendant, both in his answer and his testimony, denied all agreement, expressed or implied, to pay in

any kind of money or currency except in the currency of the country in circulation at the maturity of the notes.

It was in proof that improvements upon the lot were inferior, and fast deteriorating by age and decay, but that the price at which the lot was sold was enhanced by about eight hundred dollars beyond the price at which it would have sold before the war, in the condition it was then, but the state of the buildings and fixtures must have been in a much better condition before the war than at the time of the sale, showing an actual appreciation beyond the sum mentioned. This fact, taken in connection with the time when the notes were given, the time of their maturity, and the significant fact that the plaintiff accepted a cash payment of one thousand dollars in Confederate currency, leave but little room to doubt the ruling of the Referee in allowing the defendant the benefit of the Act already referred to.

It may be proper to state that the defendant (as shown by the proof) acted consistently with his view of his legal liability in the premises, by promptly offering to pay the first note at its maturity, and, soon after the maturity of the second note, he offered to pay both notes.

It is ordered and decreed that the exceptions to the report of the Referee be overruled, and that the plaintiff have a decree for two hundred and eighty-one (281.57) dollars and fifty-seven cents, with interest from the first of October, 1869, for the satisfaction of which the lot of land described in the bill is held liable by the lien of the mortgage, which decree shall be in full of the entire claim of the plaintiff, set up in this proceeding.

It is further ordered and decreed that each party pay his own costs.

The plaintiff has leave to apply, at the foot of this decree, at Chambers, upon five days' notice to the defendant, or in open Court, for such further order as he may feel advised, to enable him to enforce the liability of the said lot of land for the payment of this decree.

The plaintiff appealed on the grounds:

*First.* Because His Honor the Circuit Judge erred in deciding that the Act of the Legislature, entitled " An Act to determine the value of contracts made in Confederate States notes, or their equivalent," was applicable to this case, when the testimony and all the

circumstances clearly shew that the credit portion of the contract in this case was neither made in Confederate States notes or with reference to Confederate States notes as a basis of value. The evidence, in substance, is as follows:

The appellant swears positively that the contract was that he was to take one thousand dollars in Confederate money, and the balance of two thousand dollars was to be paid in good money, to be secured by notes and mortgage. That the respondent insisted upon paying more in Confederate money at the time, but the appellant positively refused, saying he had enough of the STUFF. That appellant, in the presence of the respondent, asked E. P. Lake to draw the notes payable in good money, and he replied if they were drawn payable in dollars, that meant gold, and therefore it was not necessary. That respondent sold, about the same time, a small lot adjoining the one above referred to, and not worth, by several times, as much, at twenty-five hundred dollars in cash. That appellant could have sold his lot for much more than three thousand dollars, if he would have taken Confederate money for it. That he gave twenty-one hundred dollars for said lot just before the war, and put two hundred or three hundred dollars' worth of improvements on it. E. P. Lake proves that the appellant refused to take only one thousand dollars in Confederate money, and that he spoke of good money in relation to the credit portion of two thousand dollars. Houseal proves the lot worth two thousand dollars in gold. Scott proves the lot to be worth twenty-five hundred dollars in greenbacks. Gauntt, twenty-two hundred dollars in greenbacks. McKellar, twenty-two hundred dollars in greenbacks, and with the house burned off it, eighteen hundred dollars.

*Second.* Because His Honor erred in not ruling that dollars in said notes meant gold dollars, until the contrary appeared by evidence, and that it devolved upon the respondent to establish that fact; and the fact that the contract was made in 1863, and the additional fact that the appellant did take one thousand dollars in Confederate money, was not sufficient to shew that by dollars in said notes Confederate notes were meant.—*Austin* vs. *Kinsman,* 13 Rich. Eq., 259.

*Third.* Because His Honor erred in decreeing that the appellant should pay his own costs.

*Jones & Jones,* for appellant.

*Baxter,* contra.

April 8, 1873. The opinion of the Court was delivered by

WRIGHT, A. J. The notes secured by the mortgage were each for one thousand dollars, and if the defendant proposed to claim that the medium of their payment was intended to be in Confederate treasury notes, it was incumbent on him to make the proof.— *Neely* vs. *McFadden*, 2 S. C., 168 ; *Harman* vs. *Wallace*, ibid, 208.

Besides the declarations of the parties at the time of the contract, as to their purpose, it has been held competent to introduce testimony as to the value of the consideration, and any circumstances tending to show the agreement in regard to the currency in which the payment was to be made. In the case in hand the presiding Judge sustained the ruling of the Referee, allowing the defendant the benefit of the " Act to determine the value of contracts made in Confederate States notes or their equivalent," approved March 26, 1869.—14 Stat., 277.

It is evident that the Referee not only misconceived the real purpose of the said Act, but gave to it a construction in direct contradiction to that which it had received in this Court.—*Neely* vs. *McFadden*, 2 S. C., 169 ; *Harman* vs. *Wallace*, ibid, 208. He regards it as "imperative in cases where the contract is made during the years from 1861 to 1865, unless positive and unconflicting testimony is adduced to the effect that the contract was not made in reference to such (Confederate) currency." The effect of this ruling throws the *onus* on the plaintiff to show that the contract was not made with a view to Confederate money. The conclusion of the Referee is the more extraordinary, as he states in his report "that justice to both parties would seem to require that defendant pay the true value, (which he fixes at twenty-two hundred dollars,) after deducting the payment." The only ground on which the argument against the motion seeks to sustain the judgment of the Court below is, that the question involved nothing but a mere fact, (the amount due upon the mortgage debt,) and the conclusion of the Referee, adopted by the Circuit Judge, is not to be set aside unless the preponderance of the testimony against it is overbearing.

Though the finding of the amount due on a note or other instrument for the payment of money involves an enquiry of fact, yet if the rules of law fixing the mode and manner of the calculation, and the principles which govern their application, are disregarded,

and an arbitrary method substituted, although a result may be attained, yet the *fact* sought for is not ascertained. Suppose the condition of a bond requires the interest to be paid annually, and the Referee, charged with reporting the amount due, should refuse to include the interest on the annual interest as part of the debt, would it be contended that the amount so found by him must. prevail, because he was charged only with the ascertainment of a fact?

The true enquiry was, what was legally due. The judgment of the Circuit Court is set aside, and the case remanded to it for another hearing, with the following instructions:

The intention of the parties is to prevail as to the character of the currency in which the payment of the notes was to be made, and this may be ascertained by evidence as to their understanding at the time, and, in its absence, evidence of any circumstances may be introduced to show the currency to which they looked for payment. The parties are also entitled to the benefit of the ordinance of the 27th September, 1865, referred to by this Court in the case of *Bobo* vs. *Goss*, 1 S. C., 262, and *Harman* vs. *Wallace*, already cited.

*Moses*, C. J., concurred.

*Willard*, A. J. I concur in the conclusion that the burden of showing that Confederate currency was intended by the parties rests on the defendant.